**Mandel FOGEL and Rocklyn Surgical Supply Co., Inc., Plaintiffs,**

v.

**METROPOLITAN LIFE INSURANCE CO. and Maryann Feenan, Defendants.**

**No. CV 94–3687 (ADS).**

United States District Court, E.D. New York.

Dec. 31, 1994.

Mandel Fogel, pro se.

Lester Schwab Katz & Dwyer by Carl J. Schaerf, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

In this antitrust action, the defendant Metropolitan Life Insurance Co. ("MetLife") moves for an order pursuant to Fed.R.Civ.P. 12(b)(6) dismissing the complaint. The plaintiff *pro se*, Mandel Fogel, and Rockland Surgical Supply Co., Inc. oppose the motion. The Court notes that should the complaint survive this motion to dismiss, the corporate defendant must retain counsel. *See Eagle Assoc. v. Bank of Montreal*, 926 F.2d 1305 (2d Cir.1991); *Dial–A–Mattress Franchise Corp. v. Page*, 880 F.2d 675 (2d Cir.1989).

This memorandum decision follows an oral decision, which was rendered from the bench at oral argument on December 16, 1994.

## BACKGROUND

The plaintiffs Mandel Fogel and Rocklyn Surgical Supply Co., Inc. ("Rocklyn") are purveyors of medical equipment. They apparently sought a business relationship with MetLife, aspiring to become listed as a "preferred provider" by MetLife. That quest was unsuccessful, and MetLife does not list Rocklyn as a "preferred provider." Neither party elaborates on the meaning of "preferred provider."

The plaintiffs commenced an action claiming that the defendants violated of 15 U.S.C. § 1 et seq., otherwise known as The Sherman Antitrust Act, in or about August, 1994. The complaint names as defendants MetLife and an individual, Maryann Feenan. The complaint does not identify Ms. Feenan or specify impermissible conduct on her part. The defendants state that Ms. Feenan is a MetLife employee. Although the defendants contend that Ms. Feenan has not been served with a summons and complaint in the action, an affidavit of service was filed with the Court.

The plaintiffs complain that the defendants refusal to grant their request to become a "preferred provider" was "arbitrary" and "capricious" and constitutes a violation of federal antitrust laws.

## DISCUSSION

*Rule 12(b)(6) standard*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ". *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052–53 (2d Cir. 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken". *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993); *see also Rent Stabilization Ass'n of the City of New York v. Dinkins*, 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels*, 992 F.2d at 15).

It is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman*, 754 F.2d at 1067, and in doing so, it is well settled that the court must accept the allegations of the complaint as true, *see LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 14 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only

provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice". Fed.R.Civ.P. 8(f).

Additionally, because the individual Mandel Fogel is proceeding without an attorney, the Court must give wide latitude to the papers filed by the *pro se* litigants. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (*pro se* papers are to be held "to less stringent standards than formal pleadings drafted by lawyers"). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit his rights by virtue of his lack of legal training. *Seagrave Corp. v. Vista Resources, Inc.,* 710 F.2d 95 (2d Cir.1983), *cert. dismissed,* 468 U.S. 1226, 105 S.Ct. 23, 82 L.Ed.2d 919 (1984). But the Court is also aware that " 'self representation does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Id.* (quoting *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981)). It is within this framework that the Court addresses the present motion to dismiss.

At the outset, the Court notes that the complaint alleges no facts other than that the business arrangement the plaintiffs sought to undertake with MetLife was rejected by MetLife. Furthermore, the complaint does not identify what section of the Sherman Antitrust Act they are invoking, although the claims are somewhat more fully set forth in the papers submitted in opposition to this motion. The Court will discuss the complaint in terms of the phrases used by the plaintiffs to describe the defendants' conduct and relate those phrases to the relevant provisions of the Sherman Act.

The plaintiffs raise several points that are not disputed by the defendants. The parties apparently agree that 1) the anti trust laws apply to the health care industry, 2) conspiracies to restrain trade, conspiracies to monopolize, and monopolization are prohibited by the Sherman Act, 15 U.S.C. §§ 1 and 2, and 3) a private party may bring an action under the Sherman act for injunctive relief and money damages.

*Conspiracy*

■ The plaintiffs are correct in stating that the Sherman Act prohibits conspiracies—agreements between two or more persons to achieve an illegal purpose—in restraint of trade. 15 U.S.C. § 1. A necessary element to a claim under this section is the existence of two legally distinct economic entities. *See Capital Imaging Assoc. v. Mohawk Valley Medical Assocs.,* 996 F.2d 537, 542 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993). A unilateral act does not create conspiratorial liability. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 768, 104 S.Ct. 2731, 2740, 81 L.Ed.2d 628 (1984).

■ Here, the complaint does name two defendants, MetLife and one of its employees, Maryann Feenan. However, corporate officers and employees cannot conspire with their own employer for purposes of the conspiracy element of the Sherman Act. *See GAF Corp. v. Circle Floor Co.,* 329 F.Supp. 823 (S.D.N.Y.1971), *aff'd,* 463 F.2d 752 (2d Cir.1972), *cert. dismissed,* 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973). A valid claim for conspiracy cannot be stated where MetLife and its employee, Ms. Feenan, are the only possible conspirators, because they are the only entities or persons to which the complaint refers.

■ The plaintiffs do not state any facts to support a finding that the complained of act—rejection of the plaintiffs as "preferred providers"—was anything but unilateral. The defendants correctly note that bare or conclusory allegations of conspiracy are insufficient to state a claim upon which relief may be granted. *See, e.g., Fariello v. Rodriguez,* 148 F.R.D. 670, 682–83 (E.D.N.Y.1993), *aff'd,* 22 F.3d 1090 (2d Cir.1994); *Laverpool v. New York City Transit Authority,* 760 F.Supp. 1046, 1955 (E.D.N.Y.1991), *aff'd,* 41 F.3d 1501 (2d Cir.1994); *Chow v. Coghlan,* No. CV 94–1563, 1990 WL 92702, *5 (E.D.N.Y. June 28, 1990); *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.,* 753 F.Supp. 1078, 1092 (E.D.N.Y.1990), *aff'd,* 938 F.2d 1574 (2d Cir.1991).

Conspiratorial liability can simply not be the consequence of an independent, unilater-

al business decision by one company. Therefore, the Court finds that the complaint fails to state a claim for conspiracy to restrain trade upon which relief can be granted.

*Boycott*

■ The complaint makes reference to a boycott. Like a conspiracy, a boycott requires the involvement of two or more entities acting impermissibly and in concert. *See Yonkers Raceway, Inc., v. Standardbred Owners Ass'n,* 153 F.Supp. 552 (S.D.N.Y. 1957). As explained above, the complaint in its most liberal reading reveals nothing more than an individual refusal to do business. Without more, a singular business decision does not violate the antitrust laws. *See Times–Picayune Pub. v. United States,* 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). Accordingly, the Court finds that the complaint fails to state a claim with regard to economic boycott upon which relief can be granted.

*Monopoly*

■ The plaintiffs also mention "monopoly" in the complaint. In opposition to this motion, the plaintiffs further state, correctly, that the Sherman Act prohibits monopolization and conspiracies to monopolize. However, to state a cause of action under 15 U.S.C. § 2, a relevant market must be alleged as well as facts supporting a finding of monopoly power within that market. *See United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Volvo North American Corp. v. Men's International Professional Tennis Council,* 857 F.2d 55 (2d Cir.1988); *Schwartz v. Jamesway Corp.,* 660 F.Supp. 138 (E.D.N.Y.1987).

■ The plaintiffs contend that MetLife has excluded them from the health care scheme, but do not support that contention with facts establishing that MetLife is in a position to control the health care industry in a way that would enable it to exclude potential participants. It is not possible to discern from the complaint what the relevant market in this case is or how MetLife's rejection of Rocklyn as a "preferred provider" constitutes harm to that market. For that reason the Court finds that the complaint fails to state a

cause of action with regard to monopolistic activity upon which relief can be granted.

*15 U.S.C. § 45*

■ The plaintiffs' moving papers allege that the Federal Trade Commission Act prohibits restraint of trade. *See* 15 U.S.C. § 45. However, there is no private cause of action under this act. Only the commissioner may bring a complaint for violations of this section. *See Federal Trade Commission v. Klesner,* 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138 (1929). Therefore the Court finds that the plaintiffs are unable to state a cause of action under 15 U.S.C. § 45 upon which relief can be granted.

*Refusal to deal*

The plaintiffs cite *Key Enterprises of Delaware v. Venice Hospital,* 919 F.2d 1550 (11th Cir.1990) for the proposition that the Supreme Court has repeatedly held that refusal to deal is *per se* violative of the antitrust laws. The Court does not agree with this reading of *Key Enterprises.* On the contrary, *Key Enterprises* states, "the Supreme Court held that '[i]n the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right' of a party to deal with whomever he chooses." *Key Enterprises, supra,* at 1568 (quoting *Lorain Journal Co. v. United States,* 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951)); *see also Atlanta Trading Corp. v. Federal Trade Commission,* 258 F.2d 365 (2d Cir.1958) (absent monopolistic power, a seller is free to refuse to deal with anyone).

In *Key Enterprises* the court found that a hospital's control of patient services in the relevant geographic area constituted a monopoly. *Key Enterprises, supra.* It further found that the hospital's monopolistic power was abused when it entered into a joint venture with a supplier of durable medical equipment. The hospital encouraged its patients to become customers of that one supplier to the exclusion of other vendors. The court concluded that the arrangement tended to prevent competition by channelling patient choices and insulating patients from other purchasing options.

The plaintiff does not plead facts to show that this case is analogous to *Key Enterprises*. There are no facts set forth in the complaint that illustrate that MetLife's refusal to deal with Rocklyn is an attempt to fix prices, eliminate competition or perform any other illegal act.

### Arbitrary and capricious business decision

■ The plaintiffs complain that MetLife's decision was "arbitrary" and "capricious." The Court notes that there is nothing in the relevant law that provides for judicial review of private business decisions on the basis that they are arbitrary or capricious. As long as the decision is not illegal, the judiciary will not review the business judgment of private entities.

### Damages

The plaintiffs draw the Court's attention to the case of *Eastman Kodak v. Southern Photo Materials Co.*, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927). This case holds that where there is a violation of the Sherman Act forming the basis for recovery, the plaintiff may rely on circumstantial evidence to establish damages. *Id.* However, the issue of the plaintiffs' damages is not relevant at this stage of the proceedings.

### Tortious interference with prospective contractual relations

■ The plaintiffs claim that MetLife's customers are prevented from entering into contracts with Rocklyn as a result of Met-Life's decision not to list Rocklyn as a "preferred provider." The essence of the plaintiffs' argument is that MetLife has deprived its customers of the right to choose Rocklyn and has unfairly limited the customers' knowledge of available vendors.

In New York, a legitimate business motive excuses interference with precontractual relations as long as unlawful restraint of trade does not result or wrongful means, such as physical violence or fraud, are not employed by the defendant. *See Sharma v. Skaarup Ship Management Corp.*, 699 F.Supp. 440, 446 (S.D.N.Y.1988), *aff'd*, 916 F.2d 820 (2d Cir.1990), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991) (citing *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980)). The plaintiff has not alleged facts that would support a finding of unlawful restraint of trade or wrongful means.

Moreover, even if the plaintiffs were to state a cause of action in tort, there would be no independent basis of jurisdiction for the claim because there is no diversity of citizenship in this case. The Court declines to exercise supplemental jurisdiction in the absence of a federal case.

### Additional comments of the plaintiff

The Plaintiff draws the Court's attention to New York CPLR § 103(c), allowing for improper form. This state statute, which eliminates the distinction between actions in law and actions in equity, is not relevant to the determination of this motion. Actions in this Court are governed by the Federal Rules of Civil Procedure. The relevant rule, 12(b)(6) discussed above, requires the most liberal construction of a complaint. That is the standard guiding the Court's determination of this motion.

Finally, Mr. Fogel objects to the MetLife's reliance on *Denny v. Barber*, 576 F.2d 465 (2d Cir.1978) to support a request that leave to replead be denied. Mr. Fogel is correct in noting that *Denny* involves a securities action, not a Sherman Act action. This Court offers, by way of explanation, that certain principles may be applicable to more than one type of action. The principles of pleading and dismissal can apply similarly to many different causes of action. The Court will now address the issue of repleading.

### Leave to replead

■ Rule 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See also Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 287 (2d Cir.1974). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Health–Chem*

*Corp. v. Baker*, 915 F.2d 805 (2d Cir.1990); *Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.*, 657 F.Supp. 136, 141 (E.D.N.Y.1987).

The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial, *Panzella v. Skou*, 471 F.Supp. 303, 305 (S.D.N.Y.1979), and "[u]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend." *Lerman v. Chuckleberry Pub., Inc.*, 544 F.Supp. 966, 968 (S.D.N.Y.1982), *rev'd on other grounds sub nom., Lerman v. Flynt Distributing Co.*, 745 F.2d 123 (2d Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985).

The Court finds that in this case, leave to replead is futile because an antitrust action cannot be based on the fact that one private company refused to do business with another.

## CONCLUSION

For the foregoing reasons, the defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint in its entirety against both defendants is granted and leave to replead is denied.

**SO ORDERED.**